AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) |
| The Use of Cell-Site Simulator to Locate Six Cellular Devices | ) ) ) |

Case No.  3:19 mj 533

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A-1 through A-6

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute/possess with intent to distribute controlled substances |
| 21 USC s. 841 | distribution of controlled substances |

The application is based on these facts:
Attached Affidavit of Austin Roseberry

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Austin Roseberry, SA of the DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9-6-19

_____
*Judge's signature*

City and state:  Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICES ASSIGNED CALL NUMBERS (404) 310-5033, (937) 251-1226, (937) 414-4151, (937) 430-7802, (937) 603-1390, AND (937) 369-5440 | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Austin M. Roseberry, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic

investigative technique, which is described in Attachment B, to determine the location of the

cellular devices assigned call numbers **(404) 310-5033 (UM 5033), (937)251-1226 (UM1226),**

**(937) 414-4151 (UM 4151), (937) 430-7802 (POPE Phone), (937) 603-1390 (WILLIAMS**

**Phone),** and **(937)369-5440 (ALLEN Phone)** (together "**Target Telephones**"), which are

described in Attachments A1, A2, A3, A4, A5, and A6.

2.      I am a Special Agent of the Drug Enforcement Administration (DEA), assigned to

the Dayton Resident Office.  As such, I am an "investigative or a law enforcement officer" of the

United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an

officer of the United States who is empowered by law to conduct investigations of and to make

arrests for offenses enumerated in Title 21, United States Code, Section 801, et. sec., and Title

18, United States Code, Section 2516.

3.     I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers.  Through my training, education, and experience (including debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking), I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, the various ways drug money is laundered, and the efforts of persons involved in such activities to avoid detection by law enforcement.

4.     I have participated in the investigation and prosecution of complex narcotics enterprises, including major narcotics organizations.  These investigations included the use of court-ordered eavesdropping. I have also conducted extensive analyses of telephone billing records for telephones used by narcotics traffickers.  Members of the Dayton Resident Office also have extensive experience in narcotics investigations, especially involving high-level narcotics traffickers and money launderers.  I have had and continue to have conversations with them concerning this and other narcotics related investigations. I have worked on surveillance and enforcement teams working in conjunction with court authorized T-III intercepts. I have worked as a monitor, listening to T-III intercepts, determining minimization of intercepts, and directing surveillance and enforcement teams to take action based on T-III intercepts that I monitored.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended

2

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.    One purpose of applying for this warrant is to determine with precision the **Target Telephones** location's and owner's. However, there is reason to believe the **Target Telephones** are currently located somewhere within this district based on locational data. Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Telephones** outside the district provided the device is within the district when the warrant is issued.

7.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by the users of the **Target Telephones**. There is also probable cause to believe that the location of the **Target Telephones** will constitute evidence of those criminal violations, including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

8.    Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

**PROBABLE CAUSE**

9.      This investigation is currently targeting a Drug Trafficking Organization (herein after referred to as "DTO") that collects, transports, and distributes bulk United States Currency (hereafter referred to as "USC") that represent the proceeds of drug trafficking activity.  As detailed more fully below, I am aware that Crawford BOGLE ("BOGLE") serves an integral role in this DTO and distributes bulk amounts of fentanyl and methamphetamine on its behalf in the Dayton, Ohio area.

10.      BOGLE has a history of drug trafficking activity.  During in or around October 2013, he pleaded guilty to a federal drug charge in the United States District Court for Southern District of Ohio and ultimately received a 70 month term of imprisonment in that case.  During the investigation of that matter, law enforcement recovered quantities of cocaine, crack cocaine, and marijuana.  BOGLE has additional contacts with the criminal justice system, including: burglary, bribery, menacing, possession of drugs, possession of cocaine, permitting drug abuse, and possession of drug paraphernalia.

11.      On May 22, 2019, members of the Dayton RO conducted mobile surveillance of BOGLE wherein BOGLE drove from 4492 Riverside Drive, Dayton, OH to the Cincinnati Airport. At this time, members of the Dayton RO secured a search warrant for 4492 Riverside Drive, Dayton, OH.  As a result of the execution of this search warrant, a total of approximately 1,061 grams of suspected fentanyl and approximately 2,390 grams of suspected methamphetamine were recovered from that location.

12.      On or about July 29, 2019, the Honorable Walter H. Rice, United States District Court Judge, authorized the interception of wire and electronic communications over BOGLE's

4

phone – namely, (937)610-8200 (TARGET TELEPHONE #1). Pursuant to that order, law enforcement has intercepted BOGLE on that phone since on or about July 30, 2019. Since the start of interception, law enforcement has monitored several calls involving suspected drug trafficking activity, including between BOGLE and the users of the **Target Telephones**.

13. For instance, on or about August 5, 2019 at approximately 3:40 p.m., BOGLE received an incoming call at TARGET TELEPHONE #1 from an unknown male caller using 937-251-1226 ("UM-1226"). Toll records for TARGET TELEPHONE #1 confirm this contact with 937-251-1226. Pursuant to the court authorized interception of TARGET TELEPHONE #1, DEA monitored the conversation between BOGLE[1] and UM-1226, which is detailed below:

| | |
|---|---|
| BOGLE: | [ASIDE: Get all the [unintelligible ("U/I")]. Hello? |
| UM-1226: | Bro'. |
| BOGLE: | What up, bro'? |
| UM-1226: | It's thirty-one (31) five (5) it worked out for you, bruh', if you grab two (2) of 'em, bruh'. |
| BOGLE: | Shit, that ain't gonna work, I told you, boy, I got sixty (60). |
| UM-1226: | I know, I know, I know. Okay. |
| BOGLE: | A'ight. |

---

[1] DEA has listened to recorded calls that BOGLE made while in custody on his 2012 federal drug case. DEA also has interviewed BOGLE on prior occasions. From these prior interactions, as well as reviewing the prior recorded calls, DEA recognized BOGLE's voice on the calls described throughout this document.

Based on my training and experience, and my knowledge of this case, I know that UM-1226 contacted BOGLE and offered to sell him two kilograms of some type of controlled substance. UM-1226 requested $31,500 for each kilogram (or a total of $63,000). BOGLE responded that UM-1226 knew that arrangement would not work because BOGLE only had $60,000 available to purchase the two kilograms. UM-1226 then indicated that he understood. Although BOGLE and UM-1226 – unknown source of supply -- could not reach an agreement on the 2 kilograms drug sale, this conversation nevertheless demonstrates that BOGLE has sufficient cash – namely, $60,000 -- to purchase bulk quantities of controlled substances.

14. On or about August 7, 2019 at approximately 8:35 p.m., BOGLE received an incoming call at TARGET TELEPHONE #1 from an unknown male caller using 404-310-5033 ("UM-5033"). Toll records for TARGET TELEPHONE #1 confirm this contact with 404-310-5033. Pursuant to the court authorized interception of TARGET TELEPHONE #1, DEA monitored the conversation between BOGLE and UM-5033, which is detailed below:

| | |
|---|---|
| BOGLE: | Hello? |
| UM-5033: | Yeah, bruh', this shit. I dunno', bruh', this shit… this shit ounced [PH] up now. So I dunno'… This was the same shit you gave me, bro'. That's the, the half that I picked up from you, bro'. |
| BOGLE: | Man… I mean, it's supposed to be [U/I], bruh'. |
| UM-5033: | Shit, it's short two and a half (2.5). |
| BOGLE: | Man, man I dunno' what to say. |
| UM-5033: | Yeah, yeah. |

[VOICES OVERLAP]

| BOGLE: | [U/I] play with you.  I ain't gonna play witcha'.  [U/I].  I promise you, man, I really [U/I] play with you.  Where you have it at? |
|---|---|
| UM-5033: | Man, that's all, man. |
| BOGLE: | What happened? |
| UM-5033: | I knew I shouldn't even bought this weak ass shit, I knew this shit was funny, bruh'. |
| BOGLE: | It ain't funny, I'm buyin' another one (1). |
| UM-5033: | Oh, a'right, bruh'. |
| BOGLE: | A'ight. |

Based on my training and experience, and my knowledge of this case, I know that UM-5033 appears to be an unknown drug dealer who purchases bulk quantities of drugs from BOGLE and his organization.  Specifically, UM-5033 called BOGLE to complain about the quality and quantity of drugs that he (UM-5033) had acquired from BOGLE.  For instance, UM-5033 complained that BOGLE had failed to deliver all of the drugs promised and that the sale was two-and-half ounces short of their agreed upon transaction.  UM-5033 also criticized the quality of the drugs, noting that he should not have purchased "this weak ass shit" from BOGLE. BOGLE, however, sought to reassure UM-5033, indicating that he (BOGLE) planned to purchase more of the drugs himself.  In making this representation, I believe that BOGLE was attempting to reassure UM-5033 concerning the quality of BOGLE's product.  Moreover, this call confirmed that BOGLE continues to acquire bulk amounts of drugs for resale from an as-yet-identified source of supply.  Your affiant reviewed the subscriber information for UM5033 which revealed the device was subscribed to Rush Star at 133 Luckie ST NW, Atlanta, GA

30303. Your affiant reviewed public records databases which revealed there is no one named Rush Star associated with 133 Luckie ST NW, Atlanta, GA 30303.

15.     On August 12, 2019, at 3:03 P.M., investigators intercepted a call from BOGLE utilizing the TARGET TELEPHONE #1 to an unknown male voice utilizing UM4151. The call is transcribed below:

> UM4151:     Hello.
>
> BOGLE:       Boy you owe me fifteen (15) boy.
>
> UM4151:     Huh?
>
> BOGLE:       You owe me on that.
>
> UM4151:     For what?
>
> BOGLE:       For a G.
>
> UM4151:     Damn [U/I], alright.

Based on my training and experience, I believe BOGLE was calling the male voice utilizing UM4151 to remind the unknown male that he still owes BOGLE a drug debt for a "G". Prior to this call, UM4151 called BOGLE on the TARGET TELEPHONE # and asked in coded language for drugs. A review of subscriber information for UM4151 revealed the device is subscribed to No Name at 6500 Emerald PY, Apartment 310, Dublin, Ohio.

16.     On or about August 7, 2019, at approximately 3:06 p.m., BOGLE received an incoming call on TARGET TELEPHONE #1 from SAVON POPE, who was utilizing the POPE Phone. Toll records confirm the contact between TARGET TELEPHONE #1 and the POPE Phone. Pursuant to the court authorized interception of TARGET TELEPHONE #1, DEA monitored the conversation between BOGLE and POPE, the pertinent portions of which are detailed below:

8

POPE:        Yeah, you can tell [U/I] [MUMBLES] I must of not have it [U/I]. That nigga' [U/I] shit nasty boy.

BOGLE:       That mother fucker nasty.

POPE:        Sweet as fuck boy, that shit is crazy. You know who he had wrappin' shit?

BOGLE:       They were tryin' buy your Caddy. He like man I'm gonna' wrap it same color. That's the same wrap on your shit, on your truck ain't it?

POPE:        Doesn't look like that.

BOGLE:       Call that nigga', I said man that got that shiny [U/I] truck.

POPE:        Yup.

BOGLE:       What color you want on the Cat, on the trac[phonetic]?

POPE:        [U/I].

BOGLE:       You want the black one?

POPE:        But uh..I like the blue for real.

BOGLE:       That blue?

POPE:        Yeah, I like that bitch for real

BOGLE:       Ey you know it, you probably just have to wrap it [U/I] man.

POPE:        [U/I] to the ground, put the nigga' down.

BOGLE:       You ready?

POPE:        Who me?

BOGLE:       Yeah.

POPE:        Yeah.

9

BOGLE:      I gotta drive baby... I gotta hit the play and shit bro.

POPE:       What play?

[AUDIO GLITCH]

BOGLE:      Huh?

POPE:       What play bro.

BOGLE:      I got a little play. You got some money laying around? So the mother
            fucker  can go grab a few.

POPE:       I got that money from last night.

BOGLE:      That ain't no money.

POPE:       I think seven thousand (7000).

BOGLE:      Talkin' ' bout like some real money layin' around.

POPE:       For what?

BOGLE:      Go grab these three (3) for ninety (90).

POPE:       Huh?

BOGLE:      Go grab these three (3) for ninety (90).

POPE:       For that old girl?

BOGLE:      Yeah.

POPE:       [U/I] try to turn me on like that too.

BOGLE:      What turn you on nigga'? Hey bruh, I think, I think you owe some shit
            down there in service.

POPE:       Huh?

BOGLE:      I think you owe some shit at service bro.

POPE:       I do.

BOGLE:      That's why you get [U/I].

POPE:       I do, a couple dollars.

BOGLE:      How much?

POPE:       But uh. But uh [MUMBLES]... I don't know, not that much.

BOGLE:      Probably seven (7) or five (5).

POPE:       Seven (7) or five (5)?

BOGLE:      You gonna' take this rental back late too man, they gotta have this car in a day man. Blacked out and everything. I just make it happen, put that price on their ass. I need you with me.

POPE:       So you want me to pull up on you now?

BOGLE:      Yeah, I gotta get bruh ready 'cause we may get a little play.

POPE:       Oh.

BOGLE:      So bring some money with you, bring some money with you too so we can make this deal happen.

POPE:       I'm bringin' that money that you gave me last night, that's all I got on me.

BOGLE:      Alright.

Based on my training and experience, as well as my familiarity with the facts of this case, I know that, during the above-described call, POPE and BOGLE discuss a future drug transaction in which BOGLE asked POPE if POPE had any money laying around, presumably to help purchase the

11

drugs. POPE responded that he has $7000, and BOGLE replied that he was looking for real money, indicating that $7000 was not enough. BOGLE indicated that he was looking to purchase three (3) for ninety (90). POPE asked BOGLE if he needed the money for old girl, and BOGLE confirmed. I know that, based on my training and experience, cocaine, which is often referred to as "girl", is currently in the price range of thirty-thousand per kilogram. Therefore, I believe that BOGLE hoped to acquire with POPE's monetary help three kilograms of cocaine for $90,000.

17.     During the early evening of August 8, 2019, DEA continued to maintain surveillance in the area of the Marathon residence. During that time, agents observed BOGLE repeatedly drive from the Marathon residence and then return to that location.

18.     On that evening at approximately 8:38 p.m., BOGLE placed at outgoing call from TARGET TELEPHONE #1 to WILLIAMS at WILLIAMS Phone. Toll records for TARGET TELEPHONE #1 confirm this contact with WILLIAMS Phone. Pursuant to the court authorized interception of TARGET TELEPHONE #1, DEA monitored the conversation between BOGLE and WILLIAMS, a portion of which is detailed below:

| | |
|---|---|
| WILLIAMS: | Hello? |
| BOGLE: | Boy, it's hot as a mother fucker, bro', I keep seein' the D's. |
| WILLIAMS: | Around where? |
| BOGLE: | Ridin' past me, bruh. |
| WILLIAMS: | What you thinkin'? |
| BOGLE: | I don't know, boy, that's the Feds ain't it? That's the Feds, [U/I], white pick up truck. When was we together, bruh? I was tellin' you… Wasn't I telling you about some D's or summin'? |
| WILLIAMS: | Nah, you ain't never tell me about no D's. [PAUSE] You hear me? |

12

BOGLE:          Yeah.

WILLIAMS:       Where you at? You on Marathon?

BOGLE:          Yeah, I was. They rode past there bro', sittin' down the street watchin' that. Watching me down there.

WILLIAMS:       Damn.

[VOICES OVERLAP]

BOGLE:          Motha' fuckin'…

WILLIAMS:       D's they're trying to [U/I].

BOGLE:          D's, every time I'm ridin' down Main street they comin' up Main street.

WILLIAMS:       You know it's them?

BOGLE:          Man, I know it's them. I ain't stupid, [U/I] mother fuckin' same car. I keep seein' another same car, I'ma know her. They tricked me like that boy, I know these…

WILLIAMS:       Hell naw, better not let 'em either.

BOGLE:          I'm tryina' see who the fuck I got on my line.

WILLIAMS:       You hear me? [U/I] I'm sayin' who all you gonna hit today? Better be somebody from today. [AUDIO BREAKS] If you [AUDIO BREAKS] kinda like that.

BOGLE:          I don't know.

WILLIAMS:       White boy. [BACKGROUND NOISE] Drive.

BOGLE:          Go to the drive man, for a little bit.

WILLIAMS:       You gonna drive on it?

BOGLE:          Yup. Man, just keep your eye open for a black Silverado man, blue or with the, with the, with the O, like the, like the work truck rims on it. Work truck rims like, like the factory, like the factory would

13

|  | put on there. Look funny, look, look like a police car, like police wheels on it. You feel me? On a big Silverado, bruh'. |
|---|---|
| WILLIAMS: | Ten and a half (10.5) way down the windshield. |
| BOGLE: | You need to clean up your shit too, bruh'. You hear me? |
| WILLIAMS: | Hell yeah. [U/I] here. That's why, God damn it boy, that's why I got over that side of town, boy. That was kind a real funny. |
| BOGLE: | I might just, I might just chill out, boy, I might just chill out, be cool. |
| WILLIAMS: | [U/I] Go out of town for couple weeks but [U/I]. |
| BOGLE: | My wife should get me a job or something real quick. I ain't really makin' no, [AUDIO BREAKS] I ain't makin' no money, you feel me? |
| WILLIAMS: | Yeah. |
| BOGLE: | I was tryin' to waitin' on my shit to pick up so I can, you know start to get some free money. |
| WILLIAMS: | Let somebody else work it. |
| BOGLE: | Nah. |
| WILLIAMS: | You got time. |

***

| BOGLE: | They on uh, nogga', you ain't seen that black Silverado? |
|---|---|
| WILLIAMS: | [MUFFLED] Uh-uh. |
| BOGLE: | Black Silverado like Twan [PH] had with them headlights, but they got the like the police, the police wheels on it like, like some shit that the police car would have on it. That's like, that's what's gonna throw the, the black Silverado off the wheels, you feel me? Got the lil' punk ass tool box in the back, small one, like the shit in the bed, but it's black. and a, and a van like Day Day's, with the [U/I] on it. |

14

WILLIAMS:      What color is the Caravan?

BOGLE:      Like a dark charcoal grey.

WILLIAMS:      [GRUNTS]

BOGLE:      [U/I].

WILLIAMS:      Huh? It's this one.

[BACKGROUND: CONVERSATION/ STATIC]

BOGLE:      [ASIDE: Man, let's move this shit, bruh'. Take my truck and move all that shit, bro'. I dunno' what [U/I]. Need to put it, but let's just put it up, bro'. That's all, shit, that's all I'm nervous about, boy. That's all I got, boy. [AUDIO BREAKS] [U/I] one, one I'm workin' on. This one, [U/I] that money. Count it real [U/I]. Get it and count it real quick. [BACKGROUND: UM: Man, it's [U/I].] [U/I].]

WILLIAMS:      Huh?

BOGLE:      Tay.

WILLIAMS:      Yeah. After you, bruh'.

BOGLE:      Damn, boy, it's on, bruh', you hear me? Damn, they tryina' lock a nigga up.

WILLIAMS:      You feel it like that?

BOGLE:      Nigga, they followin' me, bruh'. Look, bruh', I go down Marathon, pull up at Wheatley [PH]. [BACKGROUND: CONVERSATION] [ASIDE: I'll go down there, man.] Listen, listen, man, I'm motha' fuckin' goin' down Marathon, I'm pullin' in, I'm in, sittin' in front of the apartment building. I see the grey van go up Linda Vista, turn from the good neighborhood go, turn right there on Linda Vista. Damn, that's that same motha' fuckin' van.

15

Based on my training and experience, as well as my familiarity with the facts of this case, I know that, upon observing surveillance units around the Marathon residence, BOGLE contacted WILLIAMS. In doing so, BOGLE noted that he seen what he believed to be a "D" or detective parked in a Silverado truck near the Marathon residence. (Notably, around that time, one of DEA's surveillance units was in a pick-up truck). BOGLE indicated that he might need to "chill" or slow down his illegal drug sales. He further opined that he could ask his wife to find him legitimate employment – presumably as a means to conceal his continued drug trafficking. Finally, while on the call with WILLIAMS, but apparently speaking to someone physically in his (BOGLE's) presence, BOGLE indicated that he needed to take his truck and move "this shit" – namely, go to current stash houses, remove any drugs hidden there, and move them to new locations.

19.     On August 18, 2019, approximately 3:32 p.m., BOGLE received an incoming call on the TARGET TELEPHONE #1 from LaJuan ALLEN on the ALLEN Phone. Toll records for TARGET TELEPHONE #1 confirm this contact with ALLEN Phone. Pursuant to the court authorized interception of TARGET TELEPHONE #1, DEA monitored the conversation between BOGLE and ALLEN, a portion of which is detailed below:

ALLEN:          You been smokin'?

BOGLE:          Yeah, I got some Gushers.

ALLEN:          You got some [U/I]?

BOGLE:          Nah, this is Gushers boy, that shit fire.

ALLEN:          Uh—You got it from down there?

BOGLE:          [U/I].

ALLEN:          All right, just checkin' with you. I thought you just had some [U/I]…

16

[VOICES OVERLAP]

BOGLE:     I'm cool with that shit. I'm cool with that shit.

ALLEN:     Man, I told you, my nigga is goddamn gettin' on that motherfucker with
           ice, every time bro'.

BOGLE:     Damn.

ALLEN:     Five (5) keys every time, bro'.

BOGLE:     Damn.

ALLEN:     [LAUGHS]. He doin' [U/I] shit. This fuckin' [U/I] he was tellin' me some
           shit, bro'. He coming through with that shit in his luggage, every fuckin'
           time, five (5) keys, bro'.

BOGLE:     That nigga is crazy.

ALLEN:     Man shit, I told that nigga, boy.

BOGLE:     Yeah [U/I].

Based upon training and experience, your affiant believes ALLEN is describing to BOGLE how
ALLEN's source of supply/associate is bringing kilograms of methamphetamine (ice) in the
unnamed sources luggage. Your Affiant has reviewed subscriber information for the ALLEN
Phone which revealed the device is subscribed to Mike Hill at 2809 Salem Avenue, Dayton,
Ohio, 45406-2733. Your affiant believed this is fictitious subscriber information based on a
number of phones including the TARGET TELEPHONE #1, POPE Phone and ALLEN Phone
all utilizing the same subscriber address.

20.     Based on the aforementioned information, I believe the **Target Telephones** are
being utilized to facilitate the BOGLE Drug Trafficking Organization in violation of Title 21
U.S.C 846 and 841 (a)(1). The location of the **Target Telephones** would aid in the
identification of the unknown male voices utilizing these devices and or locate the residences of
known members of the BOGLE DTO. Based on my training and experience, I know that

17

individuals involved in the drug trade frequently utilize fictitious subscriber information in an effort to thwart law enforcement detection.

## MANNER OF EXECUTION

21.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

22.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Target Telephones** or receiving signals from nearby cellular devices, including the **Target Telephones**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to **Target Telephones** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Telephones** and use that information to determine the **Target Telephones** location, even if it is located inside a house, apartment, or other building.

23.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Telephones**, the device may briefly exchange signals with all

18

phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Telephones**, and law enforcement will limit collection of information from devices other than the **Target Telephones**. To the extent that any information from a cellular device other than the **Target Telephones** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Telephones** from all other cellular devices.

## AUTHORIZATION REQUEST

24.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

25.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephones** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19

26. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephones** outside of daytime hours.

27. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

28. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

Austin M. Roseberry
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
On: 9-6-19

HONORABLE SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and owner of the cellular device assigned phone number 404-310-5033, whose wireless provider is AT&T, and whose listed subscriber is Rush Star.

## **ATTACHMENT A-2**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and owner of the cellular device assigned phone number 937-251-1226, whose wireless provider is Sprint Corporation, whose listed subscriber is Jim Jones.

_____

## ATTACHMENT A-3

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and owner of the cellular device assigned phone number 937-414-4151, whose wireless provider is Verizon Wireless, whose subscriber is No Name.

———————————————

**ATTACHMENT A-4**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and owner of the cellular device assigned phone number 937-430-7802, whose wireless provider is AT&T, whose subscriber is Will Smith.

_____

## ATTACHMENT A-5

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and owner of the cellular device assigned phone number (937) 603-1390, whose wireless provider is Sprint, whose subscriber is Jerey Rice.

———————————————

## **ATTACHMENT A-6**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and owner of the cellular device assigned phone number 937-369-5440, whose wireless provider is AT&T, whose subscriber is Mike Hill.

———————————————

## **ATTACHMENT B**

Pursuant to an investigation of Crawford BOGLE and known and unknown associates for a violation of Title 21 U.S.C. §§ 841 and 846, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachments A-1, A-2, A-3, A-4, A-5, and A-6 by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

7